WILLIAM J. THOROUGHGOOD,

*vs.*

GEORGETOWN WATER COMPANY.

*Sussex, Jan.* 24, 1912.

An amended bill for a receiver of a water company alleged insolvency, and that the income of the plant for supplying water for municipal and private purposes was about $1,900, while the annual expenses of operation were about $600, leaving a margin for necessary repairs and improvements of $1,300, which was more than absorbed by interest payable on bonds of the company, etc. It also charged that the plant was in great need of repairs, which could not be made because there was no one within the State with authority to provide therefor, and that a failure to appoint a receiver would result in great detriment and loss to stockholders and creditors, and would leave the city without adequate water supply, etc. *Held,* that the bill was sufficient to justify the appointment of a receiver with limited powers.

BILL FOR THE APPOINTMENT OF A RECEIVER. This cause was heard on a motion for a decree on an amended bill taken *pro confesso.* The material allegations, in addition to those' appearing *ante p.* 84, appear in the following opinion.

*Whiley & Jones,* for the complainant.
*Charles W. Cullen,* for the defendant.

THE CHANCELLOR: In this case, on September 19th, 1910, I filed an opinion declining to appoint a receiver of the Georgetown Water Company, as prayed for in the bill, for reasons set forth in the opinion. These reasons were, in effect, that being a corporation for public improvement insolvency alone was not a sufficient ground for granting the relief sought, and that there were not such sufficient allegations of detriment to the stockholders or to the public shown as to justify me in taking the property and affairs of the company from the hands of its officers. Since that time, by leave, an amended bill has been filed. For want of an answer thereto a decree *pro confesso*

is moved for by the complainant.    In the amended bill the
danger of loss to stockholders, creditors and the public is more
strongly alleged than in the original bill.    In substance, the
allegations are that the annual income from the operation of
the plant for supplying the town and the inhabitants thereof
with water for municipal and private uses is about $1,900,
while the annual expense of operation is about $600, leaving a
margin for necessary repairs and improvements of $1,300.    This
margin is more than absorbed by interest payable on bonds of
the company and by interest payable on judgments and other
liens on the property of the company.    It is not stated directly
that the income is in fact so expended in payment of interest,
so that an actual deficiency exists.    Nor is any other explana-
tion made in the amended bill why the income is not in fact
applied to such repairs as are necessary in order to maintain the
efficiency of the plant, other than the statement "that there is
no one in the State with authority to provide for said repairs."
This peculiar situation by itself might not be ground for appoint-
ing a receiver for the company.    But the amended bill con-
tains the further allegation, not contained in the original bill:

"That if said repairs are longer neglected it will result in the great
detriment and loss of your orator and of other stockholders and creditors
of said company  and will leave the said Town of Georgetown without
an adequate water supply for domestic purposes and for the protection of
the lives and property of the inhabitants of said town from possible con-
flagration."

    And

"that the health, lives and property of the citizens of Georgetown will
be greatly endangered, unless this Honorable Court shall, at once, inter-
vene to protect the said creditors, stockholders and citizens and take
possession of and administer the property of the said defendant corpora-
tion."

    These new allegations justify the Court in taking some step
to protect the public, according to the views heretofore expressed
by me in the opinion already alluded to.    There is, under the
allegations of the bill, no way by which the minority of the direc-
tors can protect the interest which the public has in the main-
tenance of the efficiency of the water supplying plant, other than

by the intervention of an agent and officer of this Court. I should not wait to do so until by reason of deterioration the plant be disabled, but rather in some guarded way take charge of its affairs, and require that the income from its operation be applied to such repairs as insure its continued operation, for the benefit of the municipality, even if this involved delay in paying in full the interest on the bonds of the company, for the private interest must yield to the public need.

Therefore a receiver will be appointed, with powers much less in extent than those usually conferred upon receivers in this State.